UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GEOFFREY CALHOUN, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action |
| v. ) | File No.: |
| ) | 1:09-CV-3286-TCB |
| RICHARD PENNINGTON, Chief ) | |
| of Police for the City of Atlanta, in ) | |
| his official and individual capacities, ) | |
| et al. ) | |
| ) | |
| Defendants ) | |

Exhibit A: Reforms of the Atlanta Police Department

**1. Revocation or Amendment of Unconstitutional Policies**

The City of Atlanta agrees permanently to revoke or amend all Atlanta Police Department SOPs, Command Memoranda, and any other policies, including but not limited to SOP.3020 § 4.3.1(2) (regarding warrantless searches), SOP.3030 (regarding arrests), and SOP.3065 (regarding investigatory detentions and frisks without reasonable articulable suspicion), which contain provisions that are inconsistent with the following constitutional requirements:

a) Police officers may not lawfully detain any individual without reasonable articulable suspicion, particularized to the person being detained (i.e., a "particularized and objective basis for suspecting the particular person") that the individual is involved in specific and identifiable criminal activity.

A police officer may conduct a brief, investigatory stop of a person when the officer has a reasonable, articulable suspicion that that person is involved in criminal activity (A "*Terry* stop"). While "reasonable suspicion" is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the *Terry* stop. The officer must be able to articulate more than an "inchoate and unparticularized suspicion or 'hunch' " of criminal activity by the person. *Illinois v. Warlaw*, 528 U.S. 119, 122 (2000) (citations omitted). The officer must have a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity. *Brown v. Texas*, 443 U.S. 47, 51 (1979). Also, the officer's action must be " 'justified at its inception, and . . . reasonably related in scope to the circumstances which justified the interference in the first place.' " *United States v. Sharpe*, 470 U.S. 675, 682 (1985) (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)).

b) Police officers may not lawfully take or demand identification, or require an individual to identify himself, without reasonable suspicion, based on objective criteria, that the individual is engaged or had engaged in criminal conduct.

When a police officer is conducting a *Terry* stop on the basis of reasonable articulable suspicion that a person is engaged or has engaged in criminal activity, the officer may demand that a person identify himself or display identification. *Hiibel v. Sixth Judicial Dist. Court do Nevada, Humboldt County*, 542 U.S. 177 (2004); *Brown v. Texas*, 443 U.S. 47 (1979). In the absence of a lawful *Terry* stop, a police officer may not lawfully take identification or demand an individual to identify himself.

2

c) Police officers may not lawfully frisk an individual for weapons without a reasonable belief, directed at the particular person to be frisked, that the person is both armed and presently dangerous.

During a lawful *Terry* stop, a police officer for his own protection and safety may conduct a patdown of a person to find weapons that he reasonably believes or suspects are then in the possession of the person he has stopped. Police may not conduct a generalized "cursory search for weapons" or any search whatever for anything but weapons. The "narrow scope" of the *Terry* exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on premises where an authorized narcotics search is taking place. *Ybarra v. Illinois*, 444 U.S. 85, 93 (1979).

d) A warrantless arrest is constitutionally valid only when there is probable cause to arrest. *United States v. Watson*, 423 U.S. 411, 417 (1976). Probable cause exists if, "at the moment the arrest was made, 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing' that [the suspect] had committed or was committing an offense." *United States v. Floyd*, 281 F.3d 1346, 1348 (11th Cir. 2002); *United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir. 1992). "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149 (1972). "[P]robable cause is a reasonable ground for belief of guilt, and that the belief of guilt must be particularized with respect to the person to be searched or seized." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).

e) An arrest requiring probable cause is defined using an objective standard: whether the suspect is "'subjected to restraints comparable to those associated with a formal arrest.'" *United States v. Acosta*, 363 F.3d 1141, 1149 (11th Cir. 2004) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 441 (1984)).

3

f) In the absence of a lawful arrest, voluntary consent, or the exception commonly known as "the plain feel exception," a police officer may not lawfully search an individual for anything other than weapons without either a search warrant or probable cause plus exigent circumstances.

As to the "plain feel exception," if in conducting a lawful *Terry* patdown for weapons a police officer in lawfully patting down a suspect's outer clothing feels an object whose contour or mass makes its identity immediately apparent as contraband, it may be seized without a warrant. *Minnesota v. Dickerson*, 508 U.S. 366, 37-376 (1993).

g) Police officers may not lawfully arrest an individual in his or her home without either an arrest warrant or probable cause plus exigent circumstances. *Payton v. New York*, 445 U.S. 573 (1980).

h) A police officer may not enter a suspect's home without a search warrant or voluntary consent unless probable cause and exigent circumstances exist, and any resulting search and seizure is prohibited under the Fourth Amendment. *Payton v. New York*, 445 U.S. 573, 586 (1980). Exigent circumstances exist "when the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action." *United States v. Satterfield*, 743 F.2d 827, 844 (11th Cir. 1984). Situations in which exigent circumstances exist include: "danger of flight or escape; danger of [physical] harm to police officers or the general public; risk of loss, destruction, removal, or concealment of evidence; and 'hot pursuit' of a fleeing suspect." *United States v. Blasco*, 702 F.2d 1315, 1325 (11th Cir. 1983). "The mere presence of contraband, however, does not give rise to exigent circumstances." *United States v. Lynch*, 934 F.2d 1226, 1232 (11th Cir. 1991). Rather, "the appropriate inquiry is whether the facts . . . would lead a reasonable, experienced [officer] to believe that evidence might be destroyed before a warrant could be secured." *United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir. 1991).

## 2. Identification Requirement for APD Officers

The City of Atlanta shall require all Atlanta police officers who are in uniform, other than a rain slicker or traffic direction vest, to wear a conspicuously visible nametag, and to require any Atlanta police officer who is in uniform or has displayed a badge or other indicia of police authority (such as a police vest, etc.), to identify himself by name and badge number upon request at some point before the end of an encounter with a civilian.

## 3. No Interference with Audio or Video Recordings

The City of Atlanta shall prohibit Atlanta police officers from interfering in any way with a citizen's right to make video, audio, or photographic recordings of police activity, as long as such recording does not physically interfere with the performance of an officer's duty.

## 4. Documentation of Warrantless Seizures

With regard to any warrantless seizure (e.g. Terry stop), warrantless frisk, or warrantless search of a person conducted by an Atlanta police officer inside any residence or commercial building or structure, the City of Atlanta shall require the officer to fill out a written or electronic form before the end of his/her shift documenting the specific crime(s) of which the individual was suspected; indicating the specific facts giving rise to

5

reasonable articulable suspicion regarding that crime; indicating whether the individual was frisked for weapons, and if so giving the specific facts giving rise to reasonable articulable suspicion that he was both armed AND dangerous; indicating whether the individual was searched for anything other than weapons, and if so giving the specific facts giving rise both to probable cause and exigent circumstances. The requirements of this paragraph shall not apply if the action is in immediate response to a non-police-officer-initiated 9-1-1 call. These reports shall be a public record, routinely available for public inspection by electronic or other means, pursuant to the Georgia Open Records Act.

## 5. Documentation of ID Checks

With regard to any ID check over the ACIC/GCIC/NCIC system by an Atlanta police officer and involving persons within any residence or commercial building or structure, the City of Atlanta shall require the officer performing the check to fill out a written or electronic form before the end of his/her shift documenting the specific authority for the ID check (whether by consent or pursuant to a Terry stop or arrest), and in the case of checks pursuant to a Terry stop, to complete the form described above. The requirements of this paragraph shall not apply if the action is in immediate response to a non-police-officer-initiated 9-1-1 call. These reports shall be a

6

public record, routinely available for public inspection by electronic or other means, pursuant to the Georgia Open Records Act.

## 6. Training

The City of Atlanta shall conduct mandatory, in-person training for all sworn employees of the Atlanta Police Department as soon as practicable, given by outside sources not employed by the Atlanta Police Department, to instruct all sworn Atlanta Police Department employees about: (A) the changes contained in this agreement; (B) the law regarding detentions, arrests, frisks, and searches generally; and (C) emphasizing the existing regulation (SOP.2010, 4.6.09) which prohibits the aiming of a weapon unless the discharge of that weapon would be justifiable. Recurring training on these topics will be given to each sworn officer every two years. The training materials used in connection with this training reports shall be a public record, routinely available for public inspection by electronic or other means, pursuant to the Georgia Open Records Act.

## 7. Timely Resolution of Citizen Complaints

The Atlanta Police Department shall investigate and finally adjudicate all citizen complaints of police misconduct of any kind within 180 days of the complaint.

## 8. Investigation of Officer Conduct

The Atlanta Police Department shall conduct and conclude, within 180 days of this agreement, a thorough and meaningful investigation into the individual conduct of each officer involved in the planning, execution, and aftermath of the "Eagle Raid" and any proceeding arising therefrom with regard to each of the following Work Rules in effect on the date of the conduct under investigation:

> 4.1.03  Truthfulness  ("Employees will be truthful in their written and spoken words at all time.")
>
> 4.1.05  Obey the Law ("Employees will uphold the Constitutions of the United States and the State of Georgia, obey all applicable federal, state, and local laws, and comply with all applicable court decisions and orders of the courts.")
>
> 4.2.02  Courtesy ("A. Employees will be civil, orderly and courteous to the public, co-workers, and supervisors and should not use coarse, insensitive, abusive, violent, or profane language.")
>
> 4.2.03  Responsibilities of Supervisor:  ("A. Supervisory employees will enforce the rules and regulations of the Department and will ensure the proper conformity to Department policies and procedures. B. Supervisors will take immediate, appropriate action(s) when the conduct of any employee is contrary to the public interest or the good reputation or proper operation of the Department.")

4.2.05   Unlawful Orders: ("Supervisors are prohibited from issuing any order which is in violation of any law or Department rule, regulation, directive, or procedure.")

4.2.12   Discrimination: ("Employees will not allow any of their actions or decisions to be affected by prejudice of gender, race, color, religion, sexual orientation, social class, position or standing in the community, or political belief.")

4.2.13   Discriminatory References ("Employees will not refer to any person in a derogatory manner because of their gender, race, color, religion, sexual orientation, social class, position or standing in the community, or political preference.")

4.2.33   Conformance to Directives ("Employees are required to familiarize themselves with, and conform to, the rules, regulations, directives, and standard operating procedures of the Department.")

4.2.49   Abuse of Authority ("Employees will not use their authority to abuse, harass, oppress, or persecute any person.")

4.2.50   Maltreatment or Unnecessary Force ("A. Employees are expressly prohibited from the unnecessary or unreasonable use of force against any person or property. B. Employees will only use that force which is reasonable and necessary to affect an arrest, prevent an escape, necessarily restrict the movement of a prisoner, defend himself or another from physical assault, or to accomplish other lawful objectives. The reasonableness inquiry refers to whether the employees actions are "objectively reasonable" in light of the facts and circumstances confronting him or her, without regard to their underlying intent or motivation. The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, and its calculus must embody an allowance for the fact that police officers are often forced to make split second decisions about the amount of force necessary in a particular situation (Graham v. Connor, 490 U.S. 386 (1989) pp. 396-397).")

4.6.09   Use of Firearms ("B. Employees will not point firearms at persons in circumstances unless the discharge of that firearm would be justifiable. Employees who find it necessary to point a firearm at a person should not interpret this necessity as an obligation to discharge the weapon.")

9

This investigation will include a specific inquiry into whether each officer present at the Eagle Raid used his authority to unlawfully detain, frisk, and/or search persons or premises in violation of SOP.3020 and the laws of Georgia and the United States.

In conducting this investigation the Atlanta Police Department will interview all witnesses who were present during the raid and who agree to cooperate with the investigation, and will provide these witnesses a meaningful opportunity to identify individual officers by various means, including at a minimum a meaningful selection of photographs showing each officer's face, physical stature, and other physical characteristics.

The Atlanta Police Department's investigation regarding Work Rule 4.1.03 (Truthfulness) shall consider all statements about the Eagle Raid including but not limited to statements made to the Atlanta Police Department's Office of Professional Standards, the Atlanta Citizen Review Board, fellow and superior officers, and testimony during the March 11, 2010 Municipal Court trial arising from the Raid.

## 9. Multi-Jurisdictional Task Force Assignments

Any non-constitutional changes to the Atlanta Police Department's standard operating procedures, command memoranda, or policies and procedures set forth herein do not apply when an Atlanta police officer is acting in the course of that officer's assignment with any multi-jurisdictional task force.