UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| COREY TOOLE, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO.: |
| | ) | |
| v. | ) | 1:16-cv-02909-CAP |
| | ) | |
| CITY OF ATLANTA, | ) | |
| DEPUTY CHIEF RODNEY BRYANT, | ) | |
| DEPUTY CHIEF JOSEPH SPILLANE, | ) | |
| OFFICER ZORN, OFFICER PARKER, | ) | |
| OFFICER BOWSER, OFFICER DOE, | ) | |
| individually, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**

COMES NOW Plaintiff Corey Toole, by and through his undersigned counsel, and hereby respectfully moves the Court, pursuant to Rule 15 of the Federal Rules of Civil Procedure, for leave to file an AMENDED COMPLAINT, attached as Exhibit A and filed herewith. The new complaint maintains the counts and allegations against the same defendants from the original complaint, but accounts for additional factual information regarding the officers on duty,

supervising, and interacting with Mr. Toole surrounding the incidents leading to his arrest on November 25, 2014.

## BACKGROUND

Plaintiff filed the original Complaint on August 10, 2016, bringing a § 1983 action against Defendants and alleging violations of his First, Fourth, and Fourteenth Amendment rights. The claims arose out of events on November 25, 2014, during which the Plaintiff attended a protest in downtown Atlanta. While filming the crowd, the Plaintiff was ordered to move during the protest, to get onto a sidewalk despite already standing on the sidewalk. With no warning, officers approached him and threw him to the ground, interrupting his filming, cutting his face, ripping his jacket, and chipping one of his teeth. The Plaintiff was later arrested and charged with disorderly conduct. He filed this action for the violations of his constitutional rights under the U.S. Constitution. Defendants filed a motion to dismiss on September 19, 2016. Plaintiff files its response to the Defendants' motion to dismiss concurrently with this motion for leave to amend the complaint. Plaintiff has attached the proposed amended complaint herein, which expands upon and clarifies the officers' interactions with the Plaintiff on the date of the incident and arrest.

## ARGUMENT

## PLAINTIFF MEETS THE STANDARD FOR OBTAINING LEAVE TO FILE AN AMENDED COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 15

Federal Rule of Civil Procedure 15(a) allows a party to amend its complaint at any time with the opposing party's written consent or the court's leave. The "court should freely give leave when justice so requires." The Eleventh Circuit has recognized that that the decision to grant leave to amend a pleading is within the sound discretion of the district court, but "this discretion is strictly circumscribed by the proviso that 'leave [should] be freely given when justice so requires.'" *Gramegna v. Johnson*, 846 F.2d 675, 678 (11th Cir. 1988). Therefore, a justifying reason for denial of a motion to amend must be apparent. In the absence of a justifying reason to deny a motion to amend, "the discretion of the district court is not broad enough to permit denial." *Shipner v. Eastern Air Lines, Inc.*, 868, F.2d 401, 407 (11th Cir. 1989). Rule 15(a) requires courts to grant such leave assuming there is no undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice, or futility. *See, e.g., Foman v. Davis*, 371 U.S. 178, 182 (1962); *Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir., 1993).

Here, the Plaintiff alleges no new counts nor does he add any additional defendants. Plaintiff solely seeks to expand the information about the officers on

duty that interacted with him and other protesters surrounding the same incident which gave rise to the constitutional violations he originally alleged in the Complaint. Defendants will not be substantially or unduly prejudiced by the amendments in the Amended Complaint as they do not expand the scope of the counts or defendants to the case. This case is in its infancy. Plaintiff is acting in good faith, and is simply adding allegations relating to the core facts and claims of the original complaint and is doing so early in the process. It would be equitable and in the interest of judicial economy to permit Plaintiff to amend.

Accordingly, the Plaintiff hereby moves the Court for an Order, per the attached Proposed Order, granting leave to file the amended complaint (attached herein).

**CONCLUSION**

For the reasons identified above, Plaintiff requests that the Court grant Plaintiff's motion for leave to file the proposed amended complaint.

Respectfully submitted, this 17th day of October, 2016.

/s/ Gerald Weber
Georgia Bar No. 744878
Law Offices of Gerry Weber, LLC
Post Office Box 5391

Atlanta, GA 31107
(404) 522-0507

/s/ Mawuli Davis
Georgia Bar No. 212029
The Davis Bozeman Law Firm
4153 Flat Shoals Parkway Suite 332
Decatur, GA 30034
(404) 244-2004

/s/ Nora Benavidez
Georgia Bar No. 698687
869 Briarcliff Road, #B-12
Atlanta, GA 30306
(310) 365-5658

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically submitted the foregoing **PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF.

Tamara Nikki Baines, tbaines@atlantaga.gov
Anissa DeAnne Floyd, adfloyd@atlantaga.gov
City of Atlanta Law Department
55 Trinity Avenue, Suite 5000
Atlanta, Georgia 30303

DATED: This 17th day of October, 2016.

/s/ Nora Benavidez

Nora Benavidez

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| COREY TOOLE, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO.: |
| | ) | |
| v. | ) | 1:16-cv-02909-CAP |
| | ) | |
| CITY OF ATLANTA, | ) | |
| DEPUTY CHIEF RODNEY BRYANT, | ) | |
| DEPUTY CHIEF JOSEPH SPILLANE, | ) | |
| OFFICER ZORN, OFFICER PARKER, | ) | |
| OFFICER BOWSER, OFFICER DOE, | ) | |
| individually, | ) | |
| | ) | |
| Defendants. | ) | |

**[PROPOSED] ORDER**

Plaintiff, Corey Toole, by his designated attorneys, filed a Motion for Leave to File an Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(2).

The Court has considered Plaintiff's motion and memorandum before it now and hereby **GRANTS** Plaintiff's Motion.

________________________________________

HONORABLE CHARLES A. PANNELL, Jr.

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

PREPARED BY:

Nora Benavidez

Georgia Bar No. 698687

**ATTORNEY FOR PLAINTIFF**

EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| COREY TOOLE, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. |
| | ) | |
| v. | ) | 1:16-CV-02909-CAP |
| | ) | |
| CITY OF ATLANTA, | ) | |
| DEPUTY CHIEF RODNEY BRYANT, | ) | |
| DEPUTY CHIEF JOSEPH SPILLANE, | ) | |
| OFFICER ZORN, OFFICER PARKER, | ) | |
| OFFICER BOWSER, OFFICER DOE, | ) | |
| individually, | ) | |
| | ) | |
| Defendants. | ) | |

**[PROPOSED] AMENDED COMPLAINT**

COMES NOW Plaintiff Corey Toole and brings this action against Defendants for violations of the First, Fourth and Fourteenth Amendments of the United States Constitution, 42 U.S.C. § 2000aa and Georgia law after he was arrested, without arguable probable cause, while video-taping and participating in peaceful protest on a public sidewalk.

*Parties*

1. Plaintiff Corey Toole ("Plaintiff") is a United States citizen over the age of eighteen. He lived in Georgia at all times relevant to the complaint. He currently resides in Newark, New Jersey. He currently works in operations as a special projects coordinator at a charter middle school.

2. Defendants Officer Zorn, Officer Parker (identity to be determined and Complaint amended), Officer Bowser (identity to be determined and Complaint amended), Officer Doe (identity to be determined and Complaint amended), Deputy Chief Spillane, and Deputy Chief Bryant, (collectively "Officers") are all employed as police officers by the City of Atlanta. They are sued in their individual capacities. At all times relevant to the complaint, each acted under the color of law.

3. Defendant City of Atlanta is a municipal corporation created under the laws of the State of Georgia. At all times relevant to this complaint, the City of Atlanta employed the Officers as police officers with the Atlanta Police Department ("APD").

*Jurisdiction and Venue*

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this case presents a federal question under 42 U.S.C. § 1983 and the First, Fourth and Fourteenth Amendments of the United States Constitution.

5. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

6. Upon service of process, this Court acquires personal jurisdiction of the Defendants under Fed.R.Civ.P. 4(k)(1)(a).

7. Venue is proper in the Northern District of Georgia (Atlanta Division) under 28 U.S.C. § 1391(b) because all actions complained of occurred within the boundaries of this district and Defendants reside within this district.

## STATEMENT OF FACTS

8. Corey Toole participated in the protest in downtown Atlanta that occurred November 25, 2014, beginning around 9:30 p.m., on or around the intersection of Peachtree Street NE and Ivan Allen Jr. Boulevard, Atlanta, Georgia 30303.

9. Toole went to downtown Atlanta to engage in the growing crowd of protesters that night as a response to the Ferguson, Missouri grand jury decision to not indict a police officer for the shooting of a young unarmed man.

10. Toole stood peacefully along other with hundreds of other attendees in the march through downtown Atlanta. As the evening went on, the crowd of protesters grew and spread throughout the neighborhood.

11. As more participants gathered around Peachtree Street NE and Ivan Allen Jr. Boulevard, the crowd became thick. Toole stood on the sidewalk and used his iPhone camera to videotape the surrounding crowd and officers.

12. As Toole stood on the sidewalk around Peachtree Street and Ivan Allen Jr. Boulevard, several officers gathered around Toole. On information and belief, one officer, Defendant Zorn, sought to interfere with Toole's activities and instructed Toole to get back onto the sidewalk, despite the fact that the officer knew. Toole was in fact on the sidewalk when Officer Zorn gave the instruction. With his camera filming the crowd, Toole explained to Defendant Zorn that he was already on the sidewalk. *See* Video Exhibit.

13. Other persons known to Defendants, who were not filming, were in the same position as Toole, but were not arrested. Even persons on the road and not the sidewalk (but who were not filming) were not arrested. Toole was targeted solely because he was filming the events.

14. Officer Zorn repeated the instruction despite Toole continued position on the sidewalk and recording video footage of where he stood.

15. Toole continued to videotape the crowd from the sidewalk.

16. Based on accounts from participants nearby, Toole and Defendant Zorn argued as Toole explained he was already standing on the sidewalk.

17. Facing Defendant Zorn and at least two other officers (Defendants "Doe", yet-to-be identified male police officers, one of whom, on information and belief, is an Officer Turner), Toole felt his arms and back grabbed quickly by these multiple officers.

18. Toole explained and implored, as his camera phone continued to record, "I'm on the sidewalk!"

19. Disrupting video footage on his iPhone, Toole was pulled by the Defendant-officers through the crowd and then thrown violently into the street and onto the ground by the officers surrounding him. Multiple officers, including Defendants Zorn and Doe, kept Toole face-down on the ground, attempting to hold his arms behind his back. Toole was compliant and not resisting throughout the excessive force and arrest.

20. From being thrown so violently onto the street, Toole's face was cut with a deep gash along his forehead and another on his lower lip. One of his top front teeth also chipped. His jacket was also torn and ripped in various places from the officers' force when they threw him down on the ground.

21. At this time, Toole and Defendants Zorn and Doe were all in the street, approximately ten feet from the sidewalk where Toole had originally been standing and filming before the incident began.

22. Once on the ground, Toole's filming cut out and his iPhone was later confirmed damaged. Officers took his phone (without a warrant or arguable probable cause for any arrest or seizure).

23. Defendants Zorn and Doe held Toole against the ground for several minutes, yelling at him.

24. Toole continued to explain to the officers that there was no reason for him to be pinned down because he had been standing on the sidewalk and filming.

25. Defendants Zorn and Doe placed Toole's hands – which were already held behind his back – into plastic handcuffs.

26. Handcuffed and with his chest and face against the ground, Toole remained held down by Defendants Zorn and Doe. After a few minutes, they grabbed him upright to march him away from the protest crowd gathered around Peachtree NE and Ivan Allen Jr. Boulevard.

27. Toole asked to confirm he was under arrest and, if so, for what reason. Defendants Zorn and Doe laughed at Toole and one said Toole should "not worry" about anything and that they would sort out the situation.

28. At no time during the incident did Toole have his rights read to him.

29. At no time during the entire incident did Toole interfere with any police activity or any arrests in any way and he did not disobey any officers' instructions. On information and belief, other protesters who were not filming were in the precise area where Toole was standing when he was thrown to the ground by Defendants Zorn and Doe, but they were not arrested.

30. On information and belief, Defendant Bowser was present and/or aware of the circumstances surrounding Toole's arrest, as a supervisor to Defendant Zorn. *See* Exhibit Offense Report. Bowser had the opportunity and ability to intervene in the unconstitutional seizure and arrest, but refused to do so.

31. Toole was escorted away from the crowd and towards a prisoner transport car a few blocks away from the incident. There, approximately a dozen other individuals from the protest were congregated and handcuffed, waiting inside and outside around the transport car. Multiple officers also stood around the transport car.

32. Sitting in the prisoner transport car with other arrestees, Toole waited for over an hour. He did not receive any further information about his arrest during that time.

33. Multiple other arrestees who were handcuffed also asked what was happening. At no time during the hour or two in which the group of arrestees waited did any officer inform the group what was going on. Several officers laughed at the group waiting in the prisoner transport car.

34. As Toole waited in the prisoner transport car, officers continued to laugh and specifically pointed at Toole's bloody face.

35. The group of arrestees waited approximately another hour on the prisoner transport bus while officers discussed how to handle them.

36. Various officers began reviewing police video footage to identify the individuals waiting in the prisoner transport car. As these officers reviewed their video footage of the protest, they brought individual arrestees out of the prisoner transport car one-by-one, to check if their video footage matched whom they had arrested.

37. At no time while Toole waited in and around the prisoner transport car did he see any of the officers that threw him to the ground and arrested him.

38. After waiting for approximately another hour, the prisoner transport car finally took the group of arrestees to Zone 5 police station.

39. Officers took the group inside the police station, where other arrestees were already seated and standing around. Together, the group of arrestees

remained seated and handcuffed in a small room of the station for at least three hours. Additional groups of arrestees were brought in during this time, added to those who waited. During this time, about a dozen or more police officers were in various locations around the room, intermittently walking in and out of the police station room and discussing with each other what to do with the arrestees.

40. At no point did any officer read arrestees their rights, or offer them food, water or phone calls – nor were arrestees informed of any charges against them.

41. During this long wait, there was frequent conversation among and between the arrestees and police officers. It became clear that most arrestees were not informed of the charges against them. Several arrestees indicated officers had grabbed them from behind for no reason. It also became clear that the officers had no idea why most of the arrestees were there or what to do with them. Some of the more friendly officers openly admitted, “We don’t know” when asked what facility the arrestees would end up in, or why they were being imprisoned in the police station room.

42. The accounts from other arrestees around Toole strongly suggested that the police were using arrests to deter others from protesting and filming. The

accounts strongly suggested that the police were also using arrests to contain and control the size of the crowd downtown. Several police officers stated that the police department had decided to end the protest, and none of them could explain what they were doing there.

43. The accounts from another arrestee confirm that Toole sat in the police station room with various bloody scratches on his face and with a chipped tooth.

44. After several hours, officers began photographing arrestees. During this process, Toole was photographed while he waited in the police station. While some arrestees were taken off to be photographed, others were taken back to the bus.

45. By early morning, Toole was charged with a violation of disorderly conduct. On information and belief, and as reflected by the paperwork following Toole's arrest, Defendant Parker was the decision-making officer for charges who wrote up Toole's offense report. Both Defendant Parker and Defendant Zorn's supervisor, Defendant Bowser, reviewed the offense report and approved its contents.

46. The offense report narrative provides known false details about the incident surrounding Toole's arrest: "On 11/25/14 Corey Toole along with several

citizens were on Peachtree street/Ivan Allen. Mr. Toole remained in the city street roadway after being told to move out of the city street. Mr. Toole refused to comply. Mr. Toole disregarded an officers order and subsequently was arrested for Ped. in the roadway 106-81 (9).” Defendant Bowser approved the offense report on November 29, 2014. (Attached as Exhibit A).

47. Toole was subsequently released from the police station on November 26, 2014.

48. Toole has lasting scars on his forehead from being thrown to the ground. Toole received dental treatment for his chipped front tooth. Soreness in his back persists. He also suffers from regular migraines.

49. As a result of Plaintiff’s arrest, he suffered a loss of his liberty, humiliation, and physical and emotional distress.

**<u>City of Atlanta’s Policy and Practice and Contempt of Court in Failing to Adopt Court Required Policies and Training</u>**

50. The City of Atlanta, as a matter of policy and practice, has routinely and customarily interfered with and often arrested citizens solely for constitutionally protected filming or photographing of police activity.

51. On information and belief, and according to Defendant City of Atlanta’s own employees, specifically delegated final policymakers for the City (Defendants Rodney Bryant and Joseph Spillane) gave instructions to

officers on the date in question to arrest persons in the protest area who were filming protest activities.

52. On information and belief, Deputy Chiefs Bryant and Spillane empowered officers on the date in question to arrest without regard to probable cause if, in an officer's discretion, the arrest would assist in keeping control of the protest crowd.

53. At least three prior legal matters have been settled by the City of Atlanta involving officers who interfered with and arrested citizens solely for constitutionally protected filming or photographing of police activity. Several other instances, some leading to litigation, have occurred where officers interfered with and arrested citizens solely for constitutionally protected filming or photographing of police activity.

54. In *Anderson v. City of Atlanta*, No. 11-CV-33980SCJ (N.D.Ga. 2011), Plaintiff Felicia Anderson, brought this case against the City of Atlanta and one of its police officers alleging, among other things, that she was falsely arrested for photographing police activity that occurred in public and that this arrest was conducted pursuant to an unlawful policy and practice of the Atlanta Police Department ("APD").

55. The parties ultimately reached a settlement on Ms. Anderson's claims that included a Consent Order requiring the City to: (A) add specific language to the Atlanta Police Department's Standard Operating Procedure ("SOP") prohibiting officers from deleting or destroying recordings of police activity; (B) upgrade the penalty for officers who interfere with the public's right to record, or who delete or destroy these recordings, to a dismissal category offense; and (C) train officers every two years regarding these new changes to the SOP. (Consent Order Attached hereto as Exhibit B).

56. The court-ordered language prohibiting officers from deleting or destroying recordings was never added to the Atlanta Police Department SOP, and the required training regarding these collective revisions was not timely entered and conducted and neither the policy nor the training were in place at the time of this incident despite existing court orders.

57. The Order requiring the City of Atlanta to "permanently … implement" specific revisions to the APD SOP and "to conduct mandatory in-person training of all Atlanta police officers every two years regarding these SOP revisions."

58. More than two years later (including the time of the incident in this lawsuit), in deliberate indifference to both the existing Consent Order and to the

obvious need for the policy and training outlined, the City still had not complied with the straightforward obligations imposed upon it by the Order.

59. At the time of Toole's arrest, the language of Section 4.4.1 of APD.SOP.2011 was identical to what it was when the Court ordered that it be revised. In addition, the City still had not conducted the training that it was ordered to "regarding [the SOP] revisions."

60. The City's failures resulted in actual harm, beyond Toole's arrest. In November 2014, several individuals covering the Ferguson demonstrations in downtown Atlanta had their cameras taken away from them by APD officers as these individuals attempted to film police activity. One of them was Tyson Paul, a photojournalist for 11AliveNews, whose arrest by police officers during his coverage of the protests has been the subject of numerous news stories. Another was John Ruch, a freelance journalist for *Creative Loafing*, whose arrest by police officers during his coverage and constitutional rights being violated resulted in litigation. See *Ruch v. City of Atlanta*, No. 1:15-cv-03296-MHC (N.D.Ga. 2015) (Amended Complaint attached hereto as Exhibit C).

61. The City of Atlanta was held in contempt of court for its repeated failure to adopt policies and trainings required by existing Court orders dealing

specifically with not interfering with citizens' photographing or filming of police activities. (Contempt Order attached hereto as Exhibit D).

62. The City of Atlanta's deliberate indifference to the need for policies and training, made patently clear by the Consent Order it entered into and then violated for years, was a moving force for the constitutional violations suffered by Toole. Moreover, a custom was created of repeatedly interfering and often arresting citizens who are legally photographing or filming police activity.

63. Further, in *Calhoun v. City of Atlanta*, No. 1:09-CV-3286-TCB (N.D.Ga. 2011), the City of Atlanta entered into a Consent Order whereby the City agreed to permanently revoke or amend all APD SOPs regarding warrantless searches, arrests, and investigatory detentions and frisks without reasonable articulable suspicion. As part of that order, the City agreed to "prohibit Atlanta police officers from interfering in any way with a citizen's right to make video, audio, or photographic recordings of police activity, as long as such recording does not physically interfere with the performance of an officer's duty." (Consent Order Attached hereto as Exhibits E, F).

64. The *Calhoun* Order required that the City of Atlanta conduct mandatory, in-person trainings by non-APD trainers for all sworn APD employees. This

included training about officers being prohibited from interfering with citizens' right to record police activity. The Order required that the City of Atlanta provide recurring training on this issue to every sworn APD officer every two years.

65. Despite these orders, APD did not add the court-ordered language prohibiting officers from deleting or destroying recordings to its SOP and failed to conduct the first of the court-ordered training regarding the change in SOP until June 2015.

66. Well over two years later (and at the time of the incident in this lawsuit), in deliberate indifference to both consent orders and to the obvious need for the policy and training outlined, the City still had not complied with the straightforward obligations imposed upon it by the orders.

67. At the time of Toole's arrest, the language of Section 4.4.1 of APD.SOP.2011 was identical to what it was when the Court ordered that it be revised. In addition, the City still had not conducted the trainings that it was ordered to conduct in either the *Anderson* Order or the *Calhoun* Order.

68. In *Calhoun* as well, the City of Atlanta was held in contempt of court for its repeated failure to adopt policies and trainings required by existing Court orders dealing specifically with not interfering with citizens' photographing

or filming of police activities. (Contempt Order attached hereto as Exhibit G).

69. Finally, in *Gates v. City of Atlanta,* No. 1:2015-CV-03307-LMM (N.D.Ga. 2015), the City of Atlanta was found to have been on notice of a need for better police training for years. The Court ruled that the City of Atlanta has "been aware of several prior First Amendment violations committed by its police officers, and the City has disregarded prior court orders to better train its officers" such as those Consent Orders outlined above in *Anderson* and *Calhoun*.

70. *Gates* arose from the same Ferguson protest on November 25, 2014, as Toole's complaint herein. The Court noted in *Gates* that the City of Atlanta as a municipality and APD were not immune from liability for the arrest and violation of Gates' federal and state constitutional rights. (*Gates* Order attached as Exhibit H).

71. The City of Atlanta's deliberate indifference to the need for policies and training, made patently clear by the consent orders it entered into and then violated for years, was a moving force for the constitutional violations suffered by Toole.

72. Moreover, the City's on-going refusal to comply with the consent orders created a de facto custom of APD officers repeatedly interfering with – and often arresting – citizens who are legally photographing or filming police activity.

73. Toole timely filed ante-litem notice and demand, but received only an acknowledgment letter from the City of Atlanta that an investigation would be completed. Toole has received no findings report or other communication following the initial acknowledgment of his ante-litem notice. (Demand Attached hereto as Exhibit I; Acknowledgment Letter from the City of Atlanta Attached hereto as Exhibit J).

## Count I: Fourth Amendment

74. This Count is alleged against each officer, in their individual capacities, and the City of Atlanta, under 42 U.S.C. § 1983 and the Fourth Amendment of the United States Constitution for unlawful seizure, false arrest and malicious prosecution.

75. The facts within the Officers' knowledge were not sufficient to establish probably cause that Plaintiff committed the crime of disorderly conduct or any other criminal offense.

76. Based upon the facts known by the Officers, no reasonable police officer could believe that even arguable probable cause existed to arrest Plaintiff, and there was no arguable probable cause for his arrest.

77. The Officers each acted with conscious indifference and reckless disregard for the consequences of their actions such that an award of punitive damages is authorized under federal law.

78. The actions of the officers were caused in part by the policy and practice of the City of Atlanta whose (1) delegated final policymakers orders as well as (2) failure to adopt Court ordered policies and trainings was a moving force for the harms caused.

**Court II: First Amendment**

79. This Count is alleged against the officers and the City of Atlanta under 42 U.S.C. § 1983 and the First Amendment of the United States Constitution.

80. Toole was engaged in clearly constitutionally protected free speech activity when he sought to film police activity in a non-disruptive way from a public sidewalk.

81. The seizure, arrest and interference with filming violated Toole's First Amendment rights.

82. The actions of the officers were caused in part by the policy and practice of the City of Atlanta whose (1) delegated final policymakers' orders as well as (2) failure to adopt Court ordered policies was a moving force for the harms caused.

**Count III: Violation of Federal Law**

83. This count is alleged against all defendants for violations of 42 U.S.C. § 2000aa.

84. Defendants searched and seized documentary material Toole used to record the Ferguson protest and to disseminate to the public, intended for public communication, without securing a warrant and without probable cause or good faith to believe that the video related to the commission of any criminal offense.

85. Defendants are liable under 42 U.S.C. § 2000aa for Toole's actual damages and liquidated damages of not less than $1,000 plus attorneys' fees and costs.

**Count IV: State Law Claims**

86. This Count is alleged against the officers in their individual capacities and the City of Atlanta.

87. By placing Plaintiff under arrest and instituting prosecution, Defendants subjected Plaintiff to an unlawful detention in violation of O.C.G.A. § 51-2-70, and committed an assault and battery against Plaintiff in violation of O.C.G.A. § 51-1-13 and 51-1-14 and malicious prosecution under O.C.G.A. § 51-7-44.

88. As the facts alleged indicate, the officers acted with actual malice towards Plaintiff. In making the decision to slam Toole to the concrete and arrest him, the officers each possessed the deliberate intent to do wrong.

89. The officers' actions were malicious, reckless and callously indifferent to Plaintiff's clearly established rights, and they are not entitled to official immunity under Georgia law.

90. The City of Atlanta is liable for the intentional and negligent actions of the officers under the doctrine of *respondeat superior* for violations of State law.

*Prayer for Relief*

WHEREFORE, Plaintiff requests this Court:

a. Hold a trial by jury on all issues so triable;

b. Award nominal, compensatory, and punitive damages against the officers in their individual capacities and nominal and compensatory damages against the City of Atlanta in an amount to be proven at trial;

c. Award Plaintiff attorney's fees under 42 U.S.C. § 1988 and as authorized under Georgia law;

d. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted, this 17th day of October, 2016.

/s/ Gerald Weber
Georgia Bar No. 744878
Law Offices of Gerry Weber, LLC
Post Office Box 5391
Atlanta, GA 31107
(404) 522-0507

/s/ Mawuli Davis
Georgia Bar No. 212029
The Davis Bozeman Law Firm
4153 Flat Shoals Parkway Suite 332
Decatur, GA 30034
(404) 244-2004

/s/ Nora Benavidez
Georgia Bar No. 698687
869 Briarcliff Road, #B-12
Atlanta, GA 30306
(310) 365-5658

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically submitted the foregoing **PLAINTIFF'S PROPOSED AMENDED COMPLAINT** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF.

Tamara Nikki Baines, tbaines@atlantaga.gov
Anissa DeAnne Floyd, adfloyd@atlantaga.gov
City of Atlanta Law Department
55 Trinity Avenue, Suite 5000
Atlanta, Georgia 30303

DATED: This 17th day of October, 2016.

/s/ Nora Benavidez
________________________
Nora Benavidez